**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TALIA HALFORD,

       Plaintiff,

v.                                         No. CV 16-1267 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Talia Halford's *Motion to Reverse And Remand For Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 16), filed June 9, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 20), filed August 22, 2017; and Ms. Halford's *Reply in Support of Motion to Reverse and Remand for Rehearing* (the "Reply"), (Doc. 22), filed September 1, 2017.

Ms. Halford filed applications for supplemental security income and disability insurance benefits on May 12, 2011, alleging disability beginning November 2, 1999. (Administrative Record "AR" 1216). Ms. Halford claimed she was limited in her ability to work due to: injuries from an automobile accident, disc problems, PTSD, brain injury, fibromyalgia, loss of full use of limbs, insomnia, and hypothyroid disorder. (AR 203). Ms. Halford's applications were denied initially on October 28, 2011, and upon reconsideration on February 9, 2012. (AR 10). Ms. Halford requested a hearing before

an Administrative Law Judge ("ALJ"), which was held on October 2, 2012, before ALJ Michelle K. Lindsay. (AR 23).

On February 25, 2013, ALJ Lindsay issued her decision, finding Ms. Halford not disabled at any time between her alleged disability onset date through the date of the decision. (AR 10-21). Ms. Halford requested review by the Appeals Council, (AR 6), which was denied. (AR 1-3). Ms. Halford then appealed the Commissioner's decision to the United States District Court for the District of New Mexico. *Halford v. Social Security Administration*, No. CV 13-805, KG/CG. On January 12, 2015, the Court entered a Proposed Findings and Recommended Disposition ("PFRD") finding ALJ Lindsay failed to properly evaluate the opinion of Christopher Merchant, M.D., and recommending that the case be remanded to the Commissioner for further proceedings. *Halford*, No. CV 13-805 KG/CG, (Doc. 25 at 16-17). On March 3, 2015, the presiding judge adopted the PFRD and remanded the case to the Commissioner. *Id.*, (Doc. 26).

On remand, the Appeals Council issued an order vacating the Commissioner's prior decision and assigned this case to ALJ Lillian Richter for further proceedings consistent with the Court's order. (AR 1414). ALJ Richter held a hearing on October 21, 2015, at which Ms. Halford and VE Mary Diane Weber appeared and testified, and Ms. Halford was represented by attorney Michael Armstrong. (AR 1297-1336). On January 8, 2016, ALJ Richter issued a decision finding Ms. Halford not disabled at any time between her alleged disability onset date through the date of the decision. (AR 1260-88). However, after learning that Ms. Halford's attorney had submitted additional records, ALJ Richter reopened her decision and provided Ms. Halford an opportunity for a supplemental hearing. (AR 1543-44). Ms. Halford requested a supplemental hearing

to address the issues raised by the supplemental evidence, (AR 1545), and, on April 14, 2016, ALJ Richter held a supplemental hearing, at which Ms. Halford, VE Thomas Greiner, and Gerald Fredman, M.D., appeared and testified, and Ms. Halford was again represented by Mr. Armstrong. (AR 1337-86).

On August 9, 2016, ALJ Richter issued a decision vacating her January 5, 2016 decision and finding Ms. Halford not disabled at any time between her alleged disability onset date through the date of the decision. (AR 1216-48). Pursuant to 20 C.F.R. §§ 404.984, 416.1484, this decision by ALJ Richter is the final decision of the Commissioner for purposes of this appeal.[1]

Ms. Halford now argues that ALJ Richter erred by failing to: (1) properly consider the opinions of Dr. Fredman; (2) properly consider the opinions of State Agency examining consultants Alvin Smith, Ph.D., and Michael Emery, Ph.D.; (3) conduct a function-by-function assessment; (4) obtain a medical expert opinion; and (5) properly evaluate Ms. Halford's credibility. (Doc. 16 at 16-25). Ms. Halford asks the Court to remand this case for rehearing or, in the alternative, reverse for an immediate award of benefits. *Id.* at 25-26. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Richter erred in her consideration of the opinions of Dr. Fredman, Dr. Smith, and Dr. Emery, the Court finds that Ms. Halford's motion should be **GRANTED IN PART**.

---

[1] When a case is remanded by a district court for further consideration, the ALJ's decision on remand becomes the final decision of the Commissioner unless the Appeals Council assumes jurisdiction of the case based on the claimant filing written exceptions to the ALJ's decision. 20 C.F.R. §§ 404.984(b), 416.1484(b). Those exceptions are due within 30 days of receipt of the ALJ's decision. *Id.* Here, Ms. Halford did not file written exceptions to ALJ Richter's August 9, 2016 decision, and the time for doing so has passed. Therefore, ALJ Richter's decision is the final decision of the Commissioner for purposes of this appeal.

## I.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–

_____
[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.    Background

Ms. Halford claimed she was limited in her ability to work due to: injuries from an automobile accident, disc problems, PTSD, brain injury, fibromyalgia, loss of full use of limbs, insomnia, and hypothyroid disorder. (AR 203). At step one, ALJ Richter determined Ms. Halford had not engaged in substantial gainful activity since November 2, 1999, the alleged onset date. (AR 1219).

At step two, ALJ Richter found that Ms. Halford has the following severe impairments: "temporomandibular joint disorder; pain disorder; bilateral sciatica secondary to lumbar 4-5; lumbar 5-sacrum 1 disease; cervicalgia; fibromyalgia; depression; chronic migraine headaches; mild degenerative disc disease of the lumbar, thoracic and cervical spine; redemonstrated pars interarticularis defects at LR, without spondylolisthesis; mild spinal canal stenosis from C4-5 through C6-7; severe L neural forminal narrowing at C6-7; moderate bilateral neural foraminal narrowing at C5-6; small L paracentral disc protrusion T6-7; post-traumatic stress disorder; and mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance." (AR 1220). At step three, ALJ Richter determined that none of Ms. Halford's impairments,

solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 1221-23).

At step four, ALJ Richter found that Ms. Halford has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following exceptions: she can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; her ability to push and pull is limited by her ability to lift and/or carry; she can stand and/or walk for two hours out of an eight-hour workday, with normal breaks; she can sit for six hours out of an eight-hour workday, with normal breaks; she can occasionally climb stairs and ramps, balance, stoop, crouch, kneel and crawl; she can never climb ladders, ropes, or scaffolds; she is limited to performing simple, routine tasks; she can understand, remember, and carry out simple instructions; she can maintain attention and concentration for two hours at a time; and she is limited to occasional contact with the general public. (AR 1223).

In formulating Ms. Halford's RFC, ALJ Richter stated that she considered Ms. Halford's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling ("SSR") 96-4p. *Id.* ALJ Richter also stated that she considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* ALJ Richter found that Ms. Halford's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence in the record. (AR 1224).

Turning to the medical evidence in the record, ALJ Richter considered the opinions of Ms. Halford's multiple treating and examining physicians. ALJ Richter gave little weight to the opinion of Keith Harvie, D.O., who opined that Ms. Halford had a 30-percent whole body impairment from a 1999 car accident and that Ms. Halford was only capable of performing sedentary work. (AR 1228). ALJ Richter stated that Dr. Harvie only saw Ms. Halford on two occasions, and that his opinions are not supported by his own observations of Ms. Halford and are inconsistent with evidence in the record that Ms. Halford swam, hiked, travelled, walked, and went to college. *Id.*

Next, ALJ Richter considered the opinions of Dr. Merchant, whose opinions were the subject of the district court's remand order in *Halford v. Social Security Administration*, No. CV 13-805, KG/CG. (AR 1234). ALJ Richter noted that Dr. Merchant opined that Ms. Halford could sit, stand, and walk for a total of zero hours per day, could never lift any weight, could never push or pull, could occasionally carry up to ten pounds, and was limited to occasional grasping and fine manipulation. *Id.* Dr. Merchant further opined that Ms. Halford was limited in her ability to concentrate and focus even without pain medication, and diagnosed her with a cognitive dysfunction. *Id.* ALJ Richter gave Dr. Merchant's opinions little weight, stating that they are not supported by his treatment notes and findings, they appear to be based on Ms. Halford's subjective reports of pain and her limitations, and they conflict with medical evidence in the record. (AR 1235-36). In addition, ALJ Richter stated that Dr. Merchant's opinions "have a personal ring to them, indicating that [they] are less than objective," and that Dr. Merchant is a family practitioner who does not specialize in mental health conditions, rheumatology, or spine disorders. (AR 1236).

ALJ Richter also gave little weight to the opinion of massage therapist and kinesiologist Michelle Vidal, who opined that Ms. Halford could not work at any job that required her to sit for long periods or do any lifting, and that Ms. Halford has a "high level of PTSD." (AR 1236). ALJ Richter stated that Ms. Vidal is not an acceptable medical source and did not provide treatment notes, and that Ms. Vidal's opinions are not consistent with other medical evidence in the record. (AR 1236-37). Similarly, ALJ Richter gave little weight to the opinion of Ralph Luciani, Ph.D., who opined that Ms. Halford was disabled and unable to sustain any activity or work. (AR 1237). ALJ Richter stated that Dr. Luciani's opinion that Ms. Halford is disabled is reserved for the Commissioner, and Dr. Luciani's opinions were made more than ten years after treating Ms. Halford and are inconsistent with the medical evidence in the record. *Id.*

Next, ALJ Richter considered the opinions of Dr. Fredman, who treated Ms. Halford in 2002 and performed a psychiatric evaluation in 2015. (AR 1239-40). ALJ Richter noted that Dr. Fredman diagnosed Ms. Halford with PTSD and a mild neurocognitive disorder, and opined that she had multiple moderate and marked limitations in her non-exertional abilities. *Id.* ALJ Richter stated that she gave Dr. Fredman's opinions some weight because he did not treat Ms. Halford for many years before he completed his psychiatric evaluation, his treatment notes contradict his findings, and his opinions are not consistent with other evidence in the record. (AR 1240-41). Further, ALJ Richter found that Dr. Fredman might not be impartial because he was retained by Ms. Halford's representative to complete the 2015 evaluation. (AR 1241).

ALJ Richter also considered the opinions of Ken Wells, Ph.D., who diagnosed Ms. Halford with major depressive disorder and PTSD, and assigned her a Global Assessment of Functioning ("GAF") score of 37. (AR 1242). ALJ Richter gave Dr. Wells' opinions little weight because they are not consistent with Ms. Halford's testimony or the evidence in the record, and because it appeared that Dr. Wells did not actually assess Ms. Halford but, instead, signed a form that was completed by Ms. Halford's representative. *Id.* In addition, ALJ Richter gave little weight to the opinions of Betsy Davis, Ph.D., who found that Ms. Halford had multiple marked limitations. *Id.* ALJ Richter reasoned that Dr. Davis' opinions are not supported by the evidence in the record, she did not treat Ms. Halford consistently, and her opinions are not supported by her treatment notes. (AR 1242-43).

ALJ Richter next considered the opinions of the State Agency consultants and examiners. ALJ Richter gave the opinions of State Agency medical consultant Mary Rees, M.D., and State Agency medical examiner Rayme Romanik, M.D., some weight, noting that "[w]here the [RFC] differs from their opinions, those differences weigh in favor of [Ms. Halford]." (AR 1238). ALJ Richter also gave some weight to the opinions of State Agency consultant Dr. Emery because he only evaluated Ms. Halford on one occasion, he is not a treating source, and his opinions are not consistent with Ms. Halford's activities. (AR 1241). Similarly, ALJ Richter gave some weight to the opinions of State agency psychological consultants Dr. Smith and Lynda Walls, Ph.D., because their opinions "reflect their review of the medical evidence and also a consistency with the treatment notes and [Ms. Halford's] reported activities such as attending school and caring for her child." (AR 1241-42).

Next, ALJ Richter stated she gave Dr. Fredman's testimony little weight because it is not supported by his 2002 treatment notes. (AR 1243). ALJ Richter gave Ms. Halford's GAF scores some weight, noting that they have no direct correlation to severity requirements, and that they are a snapshot of what a claimant's level of functioning was at that particular time and are not an indication of overall functioning. *Id.* Finally, ALJ Richter gave little weight to the opinions of Ms. Halford's parents because they are not medically trained, are not disinterested third parties, and their opinions are not consistent with the evidence in the record. (AR 1244-45).

ALJ Richter found that Ms. Halford is unable to perform any of her past relevant work, so ALJ Richter proceeded to step five. (AR 1246). At step five, ALJ Richter noted that Ms. Halford was 21 years old on the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* ALJ Richter also determined that Ms. Halford has at least a high school education and is able to communicate in English. *Id.* ALJ Richter noted that the VE testified at the hearing that an individual with Ms. Halford's same age, education, work experience, and RFC could perform the jobs of addresser, table worker, and stone setter. (AR 1247). The VE stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, ALJ Richter adopted the VE's testimony and concluded that, because Ms. Halford is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 1247-48).

## IV. Analysis

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. § 416.927(c); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). "Treating sources" are generally entitled to more weight than other sources, given their treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Accordingly, ALJs must follow a particular, two-step process when evaluating and weighing opinions from treating sources. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). First, the ALJ must decide whether the treating source's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "are not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Failure to assign weight to a treating source is reversible error. *See Watkins*, 350 F.3d at 1301; *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). In deciding how much weight to give a treating source's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by objective medical evidence, whether the opinion is consistent with the record as a whole, the source's specialization, and any other relevant factor. §§ 404.1537(c)(1)-(6), 416.927(c)(1)-(6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether

it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188 at *5 (July 2, 1996) (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). Moreover, in rejecting a treating source's opinion, the ALJ ""may not make speculative inferences from medical reports"" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

### 1. Dr. Fredman's Opinions

Ms. Halford first argues ALJ Richter improperly weighed and considered the opinions of Ms. Halford's psychiatrist, Dr. Fredman. (Doc. 16 at 16-20). Ms. Halford contends that ALJ Richter's assignment of "some weight" to Dr. Fredman's opinions is "inscrutable" because ALJ Richter appears to have adopted some of Dr. Fredman's opinions, but not others, (*id.* at 17-18), and that ALJ Richter failed to provide adequate reasons for rejecting Dr. Fredman's opinions, (*id.* at 18-20).

In response, the Commissioner argues ALJ Richter reasonably evaluated Dr. Fredman's opinions by noting that many years had passed between Dr. Fredman's treatment of Ms. Halford in 2002 and his 2015 psychiatric evaluation, and that Dr. Fredman's treatment notes do not support his findings of limitations. (Doc. 20 at 16-18). The Commissioner further contends ALJ Richter properly discounted Dr. Fredman's opinions because he was retained by Ms. Halford's attorney to complete the 2015 evaluation and his opinions are not supported by the evidence in the record. *Id.* at 18-19.

Here, Dr. Fredman treated Ms. Halford between February and December 2002. (Doc. 16 at 17). In a letter written on February 19, 2002, Dr. Fredman stated that his initial diagnostic impression was that Ms. Halford suffers from severe Major Depressive Disorder, PTSD, and possibly Cognitive Disorder (not otherwise specified). (AR 1136). In 2015, Dr. Fredman reviewed Ms. Halford's medical records, examined Ms. Halford, and conducted a psychiatric evaluation and a Medical Assessment of Ability to do Work-Related Activities (Mental). (AR 1570-80). Dr. Fredman diagnosed Ms. Halford with PTSD and mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance. (AR 1578). In addition, Dr. Fredman opined that Ms. Halford has moderate limitations in her abilities to: remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; work in coordination with/or proximity to others without being distracted by them; interact appropriately with the general public; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; and set realistic goals or make plans

independently of others. (AR 1579-80). Dr. Fredman also found Ms. Halford has marked limitations in her abilities to: perform activities within a schedule; maintain regular attendance; be punctual within customary tolerance; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychological based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work place. *Id.*

ALJ Richter stated she gave "some weight" to Dr. Fredman's opinions because Dr. Fredman did not treat Ms. Halford for many years before he completed his psychiatric evaluation, his treatment notes contradict his findings, and his opinions are not consistent with other evidence in the record. (AR 1240-41). ALJ Richter also stated that she thought Dr. Fredman might not be impartial because he was retained by Ms. Halford's representative to complete the 2015 evaluation. (AR 1241).

While ALJ Richter stated she gave some weight to Dr. Fredman's opinions, ALJ Richter's RFC determination fails to include many of Dr. Fredman's findings. Specifically, ALJ Richter's RFC determination fails to account for Dr. Fredman's opinions that Ms. Halford is limited in her abilities to: remember locations and work-like procedures; work in coordination with/or proximity to others without being distracted by them; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently of others; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain an

ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychological based symptoms; perform at a consistent pace without unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work place. *Compare* (AR 1223) *with* (AR 1579-80). Therefore, ALJ Richter must provide good reasons to support her implicit rejection of several of Dr. Fredman's opinions. *See* SSR 96-2p; *Krauser*, 638 F.3d at 1324 (ALJs must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned.").

ALJ Richter's first reason for rejecting some of Dr. Fredman's opinions is because of the number of years between his treatment of Ms. Halford in 2002 and his 2015 psychiatric evaluation. (AR 1240). The length of time a physician has been treating a claimant "may be a valid reason not to accord [the physician]'s findings the conclusive weight of a treating medical-source opinion, but . . . it is not by itself a basis for rejecting them." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (further explaining that "otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings"). Therefore, the Court must determine whether ALJ Richter provided other adequate reasons for discounting Dr. Fredman's opinions.

ALJ Richter also stated that she rejected portions of Dr. Fredman's opinions because Dr. Fredman's treatment notes "paint a picture of a fairly high functioning individual who attended school, had a job, and maintained a social life." (AR 1240-41).

While Dr. Fredman's treatment notes reflect Ms. Halford's attempts to attend classes, work, and socialize, his notes also reflect that Ms. Halford had: difficulty in school, including failing a class; increased depression and recurrent nightmares; decreased energy, motivation, and concentration; pain level that was "unbearable" and "through the roof;" worry and guilt over her physical condition; trouble at school due to physical discomfort; and difficulties holding a job. (AR 1142-56). ALJ Richter does not explain why she determined that Dr. Fredman's notes indicate that Ms. Halford is "fairly high functioning," and fails to account for the troubles Ms. Halford was having while attending school, working, and socializing. Moreover, Dr. Fredman does not state that Ms. Halford is "high functioning," and instead diagnosed her with several disorders and found she has multiple moderate and marked limitations in her non-exertional abilities. Therefore, it appears that ALJ Richter's assessment of Dr. Fredman's notes are ALJ Richter's own speculation or lay interpretation. An ALJ may not substitute her lay opinion for the treating source's based on her own opinion of the source's notes. *See McGoffin*, 288 F.3d at 1252 (explaining that ALJs may not reject medical opinions based on their own speculation or lay opinion); *Winfrey*, 92 F.3d at 1021 (finding that the ALJ erred by substituting his assessments for those of the medical professionals). Therefore, ALJ Richter impermissibly rejected portions of Dr. Fredman's opinions, in part, based on speculation and her own lay opinion.

Next, ALJ Richter stated that she discounted Dr. Fredman's opinions because they are not consistent with evidence in the record that shows Ms. Halford attended school, got married, traveled to Hawaii, cared for her daughter, and was involved in her husband's business and her family's financial decisions. (AR 1240-41). ALJ Richter

does not explain how this evidence is inconsistent with Dr. Fredman's opinions that Ms. Halford has limitations in her abilities to work with co-workers, perform activities within a schedule, sustain an ordinary routine without special supervision, complete a normal workday and workweek, or respond appropriately to criticism from supervisors. In addition, ALJ Richter fails to note that Dr. Fredman's opinions are consistent with several other similar findings in the record. *See* (AR 1650-52, Dr. Davis' opinions concurring with Dr. Fredman's 2015 psychiatric evaluation, and finding similar marked limitations in Ms. Halford's non-exertional limitations; AR 1609, Dr. Merchant's findings of moderate and marked limitations in Ms. Halford's abilities to maintain attention and concentration, sustain an ordinary routine without special supervision, or work with others without being distracted by them). ALJ Richter's failure to discuss the medical evidence that supports Dr. Fredman's findings without explanation is legal error. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted).

Finally, ALJ Richter reasoned that Dr. Fredman might not be impartial because he was retained by Ms. Halford's representative to complete the 2015 evaluation. (AR 1241). ALJ Richter fails to cite to any evidence in the record to support her finding that Dr. Fredman's opinions may have been influenced because he was retained by Ms. Halford's representative. As such, this explanation is based on speculation, which is an improper basis on which to reject a treating physician's assessment. *See Langley*, 373

F.3d at 1121 (rejecting as speculative the ALJ's conclusion that a doctor was partial to the claimant in preparing a medical report as a courtesy to the claimant, stating "an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician"); *see also Hinton v. Massanari*, 13 Fed. Appx. 819, 824 (10th Cir. July 3, 2001) (unpublished) (finding that an ALJ may not reject a treating physician's report for the sole reason that the report was solicited by the claimant's counsel).

Based on the foregoing, the Court finds that ALJ Richter did not follow the correct legal standards in evaluating Dr. Fredman's opinions, and her reasons for discounting Dr. Fredman's opinions are not supported by substantial evidence in the record. Therefore, the Court is unable to meaningfully review ALJ Richter's findings. *See Clifton*, 79 F.3d at 1009 (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion).

*2. ALJ Richter's Consideration of Dr. Smith's and Dr. Emery's Opinions*

Next, Ms. Halford contends ALJ Richter failed to properly consider the opinions of State Agency consultants Dr. Smith and Dr. Emery. (Doc. 16 at 20-21). Ms. Halford argues that ALJ Richter failed to incorporate into her RFC several of their findings of mental limitations, and failed to explain why she did not adopt all of their opinions. *Id.* In response, the Commissioner contends that ALJ Richter accounted for these doctors' opinions by limiting Ms. Halford's RFC to simple, routine tasks, and only occasional contact with the public, and by finding that Ms. Halford can perform jobs that do not require significant social interaction. (Doc. 20 at 19-20).

*a.  Dr. Smith*

Dr. Smith performed a Mental RFC Assessment, in which he found Ms. Halford has moderate limitations in her abilities to: understand, remember, and carry out detained instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. (AR 785-87). ALJ Richter stated she gave Dr. Smith's opinions "some weight" because they reflect Dr. Smith's review of the medical evidence and are consistent with treatment notes and Ms. Halford's reported activities, such as attending school and caring for her child. (AR 1242).

While ALJ Richter incorporated some of Dr. Smith's findings in her RFC determination, ALJ Richter did not incorporate all of his findings, such as that Ms. Halford is limited in her abilities to complete a normal workday or workweek, perform at a consistent pace, and accept instructions and respond appropriately to criticism from supervisors. However, ALJ Richter's reasons for giving Dr. Smith's opinions some weight — because they reflect Dr. Smith's review of the medical evidence and are consistent with his treatment notes and Ms. Halford's reported activities — do not explain why she rejected some of his opinions, and, instead, imply that she intended to adopt all of his findings. ALJ Richter's failure to explain why she implicitly rejected some of Dr. Smith's opinions is legal error. *See Clifton*, 79 F.3d at 1009-10.

The Commissioner contends that ALJ Richter sufficiently accounted for Dr. Smith's opinions by limiting Ms. Halford to occasional contact with the public and to jobs that do not require significant social interaction. However, these limitations do not account for Dr. Smith's findings regarding Ms. Halfords limitations in completing a workday or workweek or in working with supervisors. Moreover, ALJ Richter fails to discuss the medical evidence in the record that supports Dr. Smith's findings, such as Dr. Fredman's and Dr. Merchant's findings that Ms. Halford is limited in her abilities to maintain attention and concentration, sustain an ordinary routine without special supervision, and work with others without being distracted by them. *See* (AR 1578, 1609). Therefore, the Court finds that ALJ Richter failed to sufficiently explain why she rejected portions of Dr. Smith's opinions. *See Clifton*, 79 F.3d at 1009 (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted)

### b. Dr. Emery

Dr. Emery opined that Ms. Halford has poor memory and concentration, her persistence "is subject to compromise from pain and fatigue," and she is "subject to catastrophic panic when she can't function as she thinks she should." (AR 783). Dr. Emery further found that Ms. Halford's interaction with others could "be complicated by affective reactivity or panic," and he diagnosed Ms. Halford with a pain disorder, PTSD with panic episodes and no agoraphobia, and reactive depression, and assigned her a

GAF score of 50. *Id.* ALJ Richter stated she gave some weight to Dr. Emery's opinions because he only evaluated Ms. Halford on one occasion, he is not a treating source, and his opinions are not consistent with Ms. Halford's activities. (AR 1241). ALJ Richter further states that she accounted for Dr. Emery's limitations in the RFC determination because she limited Ms. Halford to "unskilled low stress work." *Id.*

First, ALJ Richter's rejection of portions of Dr. Emery's opinions because he is not a treating source is not legally supportable. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) ("The Commissioner has not cited a single authority for the facially dubious proposition that the opinion of an examining medical source is, as such, dismissible."); *Doyal v. Barnhart*, 331 F.3d at 764 (holding an ALJ is required to consider a non-treating source opinion and provide "specific, legitimate reasons for rejecting it"); 20 C.F.R. §§ 404.1527(c) and 416.927(c) (providing that ALJs must "evaluate every medical opinion" and consider the six factors in deciding what weight to give the medical opinion).

In addition, while ALJ Richter stated that she discounted Dr. Emery's opinions because they are not consistent with Ms. Halford's activities, ALJ Richter does not state which activities are inconsistent with Dr. Emery's findings. Moreover, ALJ Richter failed to discuss the medical evidence in the record that supports Dr. Emery's findings. As set forth above, the opinions of Dr. Fredman, Dr. Merchant, and Dr. Smith, all support Dr. Emery's opinions regarding Ms. Halford's limitations in her abilities to concentrate and interact with others.

Finally, ALJ Richter states that she accounted for Dr. Emery's findings of limitations by limiting Ms. Halford to "unskilled low stress work." (AR 1241). While ALJ

Richter's RFC determination accounts for some of Ms. Halford's mental limitations, she does not incorporate Dr. Emery's findings that Ms. Halford is limited in her persistence or her abilities to work with supervisors or co-workers. Moreover, a limitation to unskilled work does not necessarily address an individual's mental limitations. *See Chapo*, 682 F.3d at 1290 n.3 (citation omitted) (explaining that unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions – which are not skills but, rather, general prerequisites for most work at any skill level"); Social Security Administration's Program Operations Manual System 25020.010 (Mental Limitations) (identifying the ability to interact appropriately with supervisors and co-workers as mental abilities needed for any job, including unskilled work). Therefore, the Court finds that ALJ Richter's limitation to unskilled work does not adequately support her decision to discount Dr. Emery's opinions.

## V. Recommendation

For the foregoing reasons, the Court finds that ALJ Richter failed to properly consider the opinions of Dr. Fredman, Dr. Smith, and Dr. Emery. The Court does not address Ms. Halford's remaining claims because those claims may become moot upon remand. The Court notes that, in her Motion, Ms. Halford asks the Court to remand this case for rehearing or, in the alternative, reverse for an immediate award of benefits. (Doc. 16 at 26). Ms. Halford provides no support for her request for an immediate award of benefits, and appears to abandon it in her Reply wherein she asks the Court to remand this case for a rehearing. (Doc. 22 at 9). Because Ms. Halford did not address how the evidence presented here might justify a determination to remand for an immediate award of benefits, and because the Court finds that additional fact-finding

would be useful in this case, the Court will deny this request. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (when determining whether to remand for an immediate award of benefits, courts may, among other factors, consider whether remand for additional fact-finding would be useful). The Court notes, however, that this is the second time the Court has remanded this case, and the next decision must thoroughly address the medical evidence and carefully explain the rationale for the decision reached. *See Sisco v. Dept. of Health and Human Svcs.*, 10 F.3d 739, 746 (10th Cir. 1993) ("The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.") (citation omitted).

**IT IS THEREFORE ORDERED** that Ms. Halford's *Motion to Reverse And Remand For Rehearing, With Supporting Memorandum*, (Doc. 16), is **GRANTED IN PART**.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE